# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## Case No. 1:15-cv-21035-JEM

---

## FABRIZIO DULCETTI NEVES,
**Appellant**
v.
## MARKWOOD INVESTMENTS LTD and GOLDEN DAWN CORPORATION,
**Appellees**

---

**Appeal from the United States Bankruptcy Court for the Southern District of Florida**
**Adv. Pro. 10-AP-02122-LMI / Case No. 09-33043-BKC-LMI**

---

## ANSWER BRIEF OF APPELLEE, FABRIZIO DULCETTI NEVES

---

Joanne Gelfand
Michael Chavies
Brian P. Miller
Ilana Tabacinic
**AKERMAN LLP**
One Southeast Third Avenue, Suite 2500
Miami, Florida 33131-1714
Phone:       (305) 374-5600
Fax:         (305) 374-5095
joanne.gelfand@akerman.com
michael.chavies@akerman.com
brian.miller@akerman.com
ilana.tabacinic@akerman.com
*Attorneys for Appellee Fabrizio Dulcetti Neves*

{34252551;4}

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF FACTS ............................................................................... 1

SUMMARY OF ARGUMENT .......................................................................... 4

ARGUMENT ................................................................................................... 6

    I.    THE TRIAL COURT CORRECTLY GRANTED THE
         MOTION IN LIMINE BECAUSE THE FOURTH AMENDED
         COMPLAINT DOES NOT SUFFICIENTLY PLEAD VEIL
         PIERCING............................................................................................6

    A.    The Lower Court Correctly Interpreted and Applied Florida
         Law Holding That Veil Piercing Required Markwood to Prove
         that *i*) Mr. Neves Dominated and Controlled Acosta Realty, *ii*)
         Acosta Realty Was Used for An Improper Purpose, and that *iii*)
         the Improper Use Caused Injury To Markwood. ...................................9

         1.    Markwood Failed to Adequately Allege That Mr. Neves
             Dominated and Controlled Acosta Realty. ............................. 10

         2.    Markwood Failed to Adequately Allege That Acosta
             Realty was Formed or Used for an Improper Purpose............. 14

         3.    Markwood Failed to Adequately Allege That It Was
             Injured By The Improper Use of Acosta Realty. ...................... 22

    B.    The Consent Judgment Does Not Establish that Acosta Realty
         and Mr. Neves Were Alter Egos at the Time of the Third Note
         Because Substantive Consolidation does not Require Corporate
         Domination, is not Retroactive and Collateral Estoppel is
         Inapplicable. ...................................................................................... 25

CONCLUSION ............................................................................................... 30

CERTIFICATE OF COMPLIANCE ................................................................. 30

CERTIFICATE OF SERVICE ......................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A. v. Lama,*
   633 F.3d 1330 (11th Cir. 2011) ..................................................................................10

*Al-Babtain v. Banoub,*
   806CV1973T30TGW, 2007 WL 2774210 (M.D. Fla. Sept. 24, 2007)...................................14

*Andela v. Univ. of Miami,*
   692 F. Supp. 2d 1356 (S.D. Fla. 2010) ............................................................................25, 26

*Apex Mar. Co., Inc. v. OHM Enterprises, Inc,*
   10 CIV. 8119 SAS, 2011 WL 1226377 (S.D.N.Y. March 31, 2011) ....................................7, 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...............................................................................................................5, 7, 8

*Austin v. Modern Woodman of Am.,*
   275 F. App'x 925 (11th Cir. 2008) ........................................................................................8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................................5, 6, 8

*Bellairs v. Mohrmann,*
   716 So. 2d 320 (Fla. 2d DCA 1998) .....................................................................................20

*Borchardt v. Mako Marine Intern., Inc.,*
   08-61199-CIV, 2009 WL 3856678 (S.D. Fla. Nov. 17, 2009) (Marra, J.) ..............................10

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.,*
   2011 WL 1232986 (S.D. Fla. Mar. 30, 2011) (Marra, J.)................................................. passim

*Dania Jai Alai Palace v. Sykes,*
   450 So. 2d 1114 (Fla. 1984)...................................................................................................16

*EED Holdings v. Palmer Johnson Acq. Corp.,*
   228 F.R.D. 508 (S.D.N.Y. 2005) .............................................................................16, 17, 23

*FDIC v. Colonial Realty Co.,*
   966 F.2d 57 (2d Cir. 1992).....................................................................................................27

*Gasparini v. Pordomingo,*
   972 So. 2d 1053 (Fla. 3d DCA 2008) ....................................................................................23

*Geigo Properties, L.L.P. v. R.J. Gators Real Estate Group, Inc.*,
  849 So. 2d 1109 (Fla. 4th DCA 2003) ............................................................................18, 21

*GeorgiaCarry.Org, Inc. v. Georgia*,
  687 F.3d 1244 (11th Cir. 2012) ....................................................................................18

*Hambleton Brothers Lumber Co. v. Balkin Enters., Inc.*,
  397 F. 3d 1217 (9th Cir. 2005) .....................................................................................23

*Heney v. Windsor Corp.*,
  777 F. Supp. 1575 (M.D. Fla. 1991) ..............................................................................25

*Hilton Oil v. Oil Transport Co.*,
  659 So. 2d 1141 (Fla. 3d DCA 1995) ................................................................13, 14, 15

*In re Air Crash near Rio Grande Puerto Rico On December 3, 2008*,
  11-MD-02246-KAM, 2013 WL 1729385 (S.D. Fla. April 23, 2013) (Marra,
  J.)........................................................................................................................9, 22

*In re Bull*,
  528 B.R. 473 (M.D. Fla. 2015) ..............................................................................18, 21

*In re Coleman*,
  417 B.R. 712 (Bankr. S.D. Miss. 2009) .........................................................................13

*In re Dow Corning*,
  419 F.3d 195 (3rd Cir. 2007) .......................................................................................28

*In re E'Lite Eyewear Holding, Inc.*,
  08-41374, 2009 WL 349832 (Bankr. E.D. Tex. Feb. 5, 2009).............................................29

*In re Fundamental Long Term Care, Inc.*,
  507 B.R. 359 (Bankr. M.D. Fla. 2014) ....................................................................22, 23

*In re Garden Ridge Corp.*,
  386 F. App'x 41 (3d Cir. 2010) ....................................................................................27

*In re Garden Ridge Corporation*,
  338 B.R. 627 (Bankr. D. Del. 2006) ..............................................................................29

*In re Geneva ANHX*,
  496 B.R. 888 (Bankr. C.D. Ill. 2013)..............................................................................29

*In re Murray Industries, Inc.*,
  125 B.R. 314 (Bankr. M.D. Fla. 1991) ...............................................................26, 27, 28

*In re Optical Technologies*,
  252 B.R. 531 (M.D. Fla. 2000) .....................................................................................28

*In re S & G Fin. Services of S. Florida, Inc.*,
   451 B.R. 573 (Bankr. S.D. Fla. 2011)................................................................................13

*John Daly Enters., LLC, v. Hippo Golf Co.*,
   646 F. Supp. 2d 1347 (S.D. Fla. 2009)............................................................................14

*Ledford v. Peeples*,
   657 F.3d 1222 (11th Cir. 2011) ......................................................................................19

*Ocala Breeders' Sales Co. v. Hialeah, Inc.*,
   735 So. 2d 542 (Fla. 3d DCA 1999)................................................................................21

*Rosenfeld v. Oceania Cruises, Inc.*,
   682 F.3d 1320 (11th Cir. 2012) ......................................................................................23

*Salas v. Wellington Equine Associates*,
   9:14-CV-81483, 2015 WL 1412099 (S.D. Fla. Mar. 26, 2015) (Rosenberg, J.)............ passim

*Sanchez v. Renda Broadcasting Corp.*,
   127 So. 3d 627 (Fla. 5th DCA 2013)...............................................................................21

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*,
   234 B.R. 293 (Bankr. S.D. N.Y. 1999).............................................................................1

*Smith v. Ocwen Fin.*,
   488 F. App'x 426 (11th Cir. 2012) ..................................................................................19

*Southeast Capital Inv. Corp. v. Albemarle Hotel, Inc.*,
   550 So. 2d 49 (Fla. 2d DCA 1989)............................................................................21, 22

*State St. Bank & Trust Co. v. Badra*,
   765 So. 2d 251 (Fla. 4th DCA 2000)...............................................................................26

*Stock Fraud Prevention, Inc. v. Stock News Info, LLC*,
   11-80764-CIV, 2012 WL 664381 (S.D. Fla. Feb. 12, 2012) (Marra, J.)...................................9

*Suniland Assocs. v. Wilbenka, Inc.*,
   656 So. 2d 1356 (Fla. 3d DCA 1995)..............................................................................26

*Trust, Inc. v. First Flight Ltd. Partnership*,
   140 F. Supp. 2d 628 (E.D. Va. 2001) ...............................................................................1

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ......................................................................................24

*USP Real Estate Inv. Trust v. Discount Auto Parts, Inc.*
   570 So. 2d 386 (Fla. 1 DCA 1990)..................................................................................21

*Wusiya v. City of Miami Beach,*
  14-15323, 2015 WL 3484326 (11th Cir. June 3, 2015)............................................................6

**Rules**

Fed. R. Bankr. P. 7008 ..................................................................................................................6

Fed. R. Bankr. P. 7009 ................................................................................................................16

Fed. R. Bankr. P. 8015(a)(7)(C) .................................................................................................30

Fed. R. Civ. P 8(a) ........................................................................................................................6

Fed. R. Civ. P. 9(b) .....................................................................................................................16

## STATEMENT OF FACTS

Appellant's Statement of Facts provides no more than a lengthy story of how the trial court got it right below by finding that Markwood failed to plead a veil piercing theory.  Appellant's Amended Initial Brief  ("Appellant's Brief") [ECF No. 19] at 3-10.[1, 2]   Although its Summary of the Argument is wrought with sensational facts that Markwood contends should be "inferred" from the allegations actually pled, it is not until the Argument section of its brief that Markwood finally sets forth the sparse facts within the four corners of the Fourth Amended Complaint that it contends state a claim for veil piercing.  Appellant's Brief [ECF No. 19] at 23-24.[3]

The only facts actually pled by Markwood in its Count VI seeking to enforce the Third Note are found in paragraphs 25 and 27 of the Fourth Amended Complaint, *to wit*:

---

[1] The documents cited herein are also available to the Court in the record that was transmitted to this Court by the Bankruptcy Clerk.  Citations to the record will be as follows: Docket entries in this Court will be cited as [ECF No._].  References to docket entries in the Adversary Proceeding below will be cited as [Bankr. ECF No. __].

[2] Citations to Appellant's Brief are to the page number indicated on the bottom of the page as opposed to the page number assigned by the ECF system.

[3] In its brief Markwood defines "Count VI (Action on the Third Note)" as the "Veil Piercing Claim."  *Compare* Fourth Amended Complaint ("Comp.") [Bankr. ECF No. 419] at 24 *with*  Appellant's Brief [ECF No. 19] at 5.  Yet, veil piercing is a theory of liability, not a count or a claim for relief.  *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 293 (Bankr. S.D. N.Y. 1999); *Trust, Inc. v. First Flight Ltd. Partnership*, 140 F. Supp. 2d 628 (E.D. Va. 2001).

> 25.    Acosta Realty Holdings, LLC ("Acosta Realty") was Debtor's wholly-owned company and his alter ego. Acosta Realty existed only as a pass-through entity for funds Debtor obtained from Plaintiffs.
>
> ***
>
> 27.    In each instance, Debtor immediately transferred the loan proceeds to third-party transferees without consideration.

Comp. [Bankr. ECF No. 419] at ¶¶ 25, 27 (hereafter "Paragraph 25" and "Paragraph 27" respectively).

As to its Count I, the fraud claim, Markwood additionally pled that:

> 107.   Neves Realty Holdings, like Acosta Realty Holdings, never conducted any business and served merely as Debtor's alter ego and a vehicle to hide and move the stolen funds.

*Id.* at ¶ 107 (hereafter "Paragraph 107").

Paragraph 25 and Paragraph 27 are incorporated into Count VI seeking to enforce the Third Note. *Id.* at ¶ 149.   Paragraph 107 is not incorporated into Count VI, but is only incorporated into the failed fraud claim. *Id.* at ¶ 113.

Notably, the lower court ordered Mr. Neves to answer the Fourth Amended Complaint, barring him from moving to dismiss even though he successfully defeated the four previous complaints filed by Markwood. Trans. Jan. 30, 2012 hearing [Bankr. ECF No. 508] at 29.

Finding himself locked into the pleading, Mr. Neves vigilantly fought against any efforts to enlarge the allegations of the Fourth Amended Complaint.

Thus, pretrial, Mr. Neves filed various motions in limine, including the motion seeking to exclude evidence of veil piercing on the grounds that the theory was not adequately pled.[4]   Omnibus Motion in Limine [Bankr. ECF No. 886] at 8. Moreover, at the commencement of the five day trial Mr. Neves read into the record and defined his Rule 15(b) objection as follows, which objection was made frequently during the trial:

> We will define then for the purposes of this trial what we will call our Rule 15(b) objection, and that will be that defendant finds objectionable allegations that may constitute amendments to the plaintiffs' complaint. Mr. Neves expressly withholds his consent to any proposed amendments. Mr. Neves -- excuse me, the plaintiffs have failed to obtain leave of Court for any proposed amendments. Moreover, leave of Court should not be granted at this late stage because discovery has closed, this is the fourth amended complaint, and plaintiffs were aware of these allegations at the time the fourth amended complaint was filed or through discovery. Mr. Neves objects pursuant to Rule 15(b)(1) to the introduction of any evidence at trial to prove or disprove objectionable allegations because it would prejudice Mr. Neves' defense of the merits and the proposed allegations, not aide in presenting the merits of the existing operative complaint. Mr. Neves further requests that the Court take judicial notice of Mr. Neves' objection to the objectionable pleadings, and requests that the Court preclude any amendments of the pleading pursuant to Rule 15(b), and note for the record that Mr. Neves has not waived any objections pursuant to Rule 15(b), and

---

[4] Below, the parties and the Court referred to veil piercing loosely as "alter ego." Neves Omnibus Motion in Limine [Bankr. ECF No. 886]; Plaintiff's Response to Omnibus Motion in Limine [Bankr. ECF No. 903]; Transcript of Hearing on February, 20 2014 [Bankr. ECF No. 922] at 24.

that will be defined as the defendant's Rule 15(b) objection.

Trans. Feb. 24, 2014 Hearing  [Bankr. ECF No. 924] at 7-8.

## SUMMARY OF ARGUMENT

It is unfathomable that following five years of litigation, five different operative complaints and a motion in limine that was fully briefed and heard pre-trial, Markwood seeks reversal of the trial court's ruling based on facts not in the record and arguments not preserved for appeal and a complaint that is deficient under Rule 8 and Florida law.  Stated simply, Markwood seeks to hold the individual shareholder, Mr. Neves, personally liable under a corporate promissory note even though Markwood failed to sue *the* maker and borrower on the note, Acosta Realty, and failed to allege ultimate facts stating a veil piercing theory despite sufficient ability, resources, time and opportunity to do so.

Florida law is clear that piercing the corporate veil is an extraordinary remedy available only when the "very stringent" three part test is properly pled and proven with persuasive evidence. *See Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.,* 2011 WL 1232986, at *6-7 (S.D. Fla. Mar. 30, 2011) (Marra, J.).  Even a cursory review of Markwood's Fourth Amended Complaint demonstrates that Markwood did not allege facts that taken as true state a facially plausible claim for the extraordinary remedy of veil piercing.   Instead,

the Fourth Amended Complaint includes a handful of conclusory and bare allegations that could not allow the trial court to draw the requisite reasonable inference that the corporate veil should be pierced.

The following three elements must be established before the unusual remedy of veil piercing is imposed:  (1) that Mr. Neves dominated and controlled Acosta Realty, and that (2) Acosta Realty was used for an improper purpose which (3) caused injury to Markwood.  *Id.* at *6.  Contorting the Supreme Court's decisions in *Twombly* and *Iqbal,* Markwood contends that the trial court erred by not inferring key facts enabling it to draw a reasonable inference in favor of veil piercing.  Fittingly, the lower court made no inferences and found that the facts alleged concerning Acosta Realty which are found in Paragraph 25 and Paragraph 27 (and as to the fraud count only at Paragraph 107), were insufficient as a matter of law to state a claim for veil piercing.

As the trial correctly court held, "the mere conclusory statement that an entity and individual are alter egos is not sufficient to satisfy pleading standards" and the corporation must be used for an improper purpose.  *See* Tr. Trans. Oral Ruling on February 24, 2014 ("Oral Ruling") [Bankr. ECF No. 924] at 16-17.  Indeed, the Fourth Amended Complaint fails to allege any blurring or disregard of Acosta Realty's corporate formalities and does not demonstrate that Acosta Realty was dominated and controlled by Mr. Neves.  Nor, does the Fourth Amended

Complaint contain any allegations concerning the requisite improper purpose of Acosta Realty and any injury caused by the improper purpose.

Clearly, Markwood must remain responsible as the architect of its numerous complaints and the theories it decided to assert and maintain for the past five years. The Bankruptcy Court correctly granted Mr. Neves' Motion in Limine finding Markwood's Fourth Amended Complaint failed to satisfy the mandatory veil piercing pleading standards.

## **ARGUMENT**

## I.   **THE TRIAL COURT CORRECTLY GRANTED THE MOTION IN LIMINE BECAUSE THE FOURTH AMENDED COMPLAINT DOES NOT SUFFICIENTLY PLEAD VEIL PIERCING.**

The sufficiency of the Fourth Amended Complaint is measured under Federal Rule of Civil Procedure 8(a), made applicable to the adversary proceeding below by Federal Rule of Bankruptcy Procedure 7008, providing that a pleading "must" include:

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) (hereafter "Rule 8").

While a court must accept well-pled facts as true, it need not assume the truth of conclusory allegations, or make unwarranted deductions of fact and

argumentative inferences. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss); *Wusiya v. City of Miami Beach*, 14-15323, 2015 WL 3484326, at *1 (11th Cir. June 3, 2015) ("Courts are not required, however, to accept as true bare legal conclusions supported by mere *conclusory statements*") (emphasis original); *Apex Mar. Co., Inc. v. OHM Enterprises, Inc*, 10 CIV. 8119 SAS, 2011 WL 1226377, at *2 (S.D.N.Y. March 31, 2011) ("[P]urely conclusory allegations cannot suffice to state a claim based on veil piercing or alter-ego liability, even under liberal notice pleading).

Accordingly, a complaint cannot rest on "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Rather, a complaint must contain sufficient factual allegations which when taken as true state a claim that has "facial plausibility." *Id.* A claim is facially plausible when the "plaintiff pleads factual content that *allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged*." *Id.* (emphasis added).

Markwood contends in violation of Supreme Court and Eleventh Circuit precedents that the allegations in Paragraph 25 and Paragraph 107 are the mere starting point for analyzing the sufficiency of the Fourth Amended Complaint and

form a springboard for the lower Court to make impermissible inferences and deductions of critical and **unpled** ultimate facts. Appellant's Brief [ECF No. 19] at 18. Markwood contends that in determining the sufficiency of its Fourth Amended Complaint the lower court erred by not inferring that Acosta Realty was undercapitalized, had no assets, had an inability to meet its contractual obligations and was used by Mr. Neves as a personal piggy bank, *from the* bare allegations it pled, *to wit,* that Acosta Realty was wholly owned by Mr. Neves, did not conduct any business and was a pass through entity.  *Id.* at 16, 18, 19, 23.

The notion that the trial court should have inferred critical facts and relied on these inferences outside the four corners of the complaint when analyzing its sufficiency is *contra* to the plain reading of *Twombly* and  unsupported by even the liberal pleadings standards of Rule 8. *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678-679.  *See generally Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (a court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss); *Apex Maritime Co., Inc.*, 2011 WL 1226377 at *2 (holding that conclusory allegations that the defendants exercised "complete dominion and control" over the defendant so as to "commit a fraud or wrong" was inadequate to state a claim for piercing the corporate veil ).

The four corners of the Fourth Amended Complaint failed to include sufficient factual allegations for a court to reasonably infer that Mr. Neves was

Acosta Realty's alter ego and that Acosta Realty was formed or used for an improper purpose that injured Markwood.

> **A.**     **The Lower Court Correctly Interpreted and Applied Florida Law Holding That Veil Piercing Required Markwood to Prove that *i*) Mr. Neves Dominated and Controlled Acosta Realty, *ii*) Acosta Realty Was Used for An Improper Purpose, and that *iii*) the Improper Use Caused Injury To Markwood.**

The Bankruptcy Court properly held that to state a veil piercing theory the Fourth Amended Complaint must contain allegations of an improper purpose and not merely allegations relating to undercapitalization. *See* Oral Ruling [Bankr. ECF No. 924] at p. 16-19.  Under Florida law, the corporate veil may be pierced "in only the most extraordinary cases." *Lancer Offshore, Inc.,* 2011 WL 1232986, at *6.  The extraordinary remedy of piercing the corporate veil and holding a shareholder liable for corporate obligations involves:

> [A] very stringent three-part test, which requires persuasive evidence that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact nonexistent and the shareholders were alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Id.; In re Air Crash near Rio Grande Puerto Rico On December 3, 2008*, 11-MD-02246-KAM, 2013 WL 1729385, at *4 (S.D. Fla. April 23, 2013) (Marra, J.)

(listing elements). *See also Stock Fraud Prevention, Inc. v. Stock News Info, LLC,* 11-80764-CIV, 2012 WL 664381, at *8 (S.D. Fla. Feb. 12, 2012) (Marra, J.) (dismissing claims for breach of contract against non-signatory of contract and promissory notes where "[a] review of the First Amended Complaint does not reveal any allegations which would permit the piercing of the corporate veil").

As shown below, the allegations and conclusory statements set forth in Paragraph 25 and Paragraph 27 fail the pleading requirements of Rule 8 and do not pass muster under the onerous three-part test required to pierce the corporate veil. *See Borchardt v. Mako Marine Intern., Inc.,* 08-61199-CIV, 2009 WL 3856678, at *6 (S.D. Fla. Nov. 17, 2009) (Marra, J.) (dismissing alter ego claims for failure to allege facts supporting the claim—even though the complaint used the term "alter-ego"); *Salas v. Wellington Equine Associates,* 9:14-CV-81483, 2015 WL 1412099, at *5-6 (S.D. Fla. Mar. 26, 2015) (Rosenberg, J.) (allegations that corporation used to hide and shield assets from creditors deemed insufficient).[5]

### 1.   Markwood Failed to Adequately Allege That Mr. Neves Dominated and Controlled Acosta Realty.

Pleading the first element of alter ego, or disregard of the corporate entity, requires specific allegations demonstrating that "corporate formalities" were ignored and that the corporation was a mere instrumentality. *See Salas,* 2015 WL

---

[5] As shown below, even if Paragraph 107 is considered notwithstanding that it was not pled in Count VI, the pleading is still woefully insufficient.

1412099, at \*5-6.  The inquiry is fact-intensive. *See generally Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).  Applying Florida law, in *Lancer Offshore, Inc.*, this Court found the following factors relevant when determining whether the "mere instrumentality" element was adequately pled: (i) the subsidiary has substantially no business or assets; (ii) the parent finances the subsidiary; (iii) the subsidiary has grossly inadequate capital; and (iv) the parent pays the subsidiary's expenses and salaries. *See Lancer Offshore, Inc.*, 2011 WL 1232986, at \*7 (the factual allegations did not indicate that the company was a "mere instrumentality" or that it was so dominated and controlled by the shareholder that it lacked a separate corporate existence).

In *Salas,* the plaintiff sued several related corporations together with the individual veterinarian who owned the practice. *Salas*, 2015 WL 1412099 at \*1-2. The plaintiff alleged that many of the defendant companies "are single owner entities which operate out of the same facility … and are controlled by and used by [the doctor] for his own benefit with disregard of corporate formalities *and to hide his assets and to shield his assets from creditors.*"  *Id.* at \*2 (emphasis added).[6] This language was deemed  insufficient to put the defendant doctor on notice of the

---

[6] As to other corporate defendants, the plaintiff alleged they were instrumentalities to shield the individual shareholder from their creditors because the entities failed to obtain malpractice insurance. *Salas,*  2015 WL 1412099, at \*2.

plaintiff's intention to pierce the corporate veil, prompting dismissal of the action. *Id.* at *5. The Court found that the plaintiff's failure to plead that "corporate lines were blurred, or that corporate formalities were disregarded" was fatal to its attempt to state a claim for piercing the corporate veil. *Id.*

The meager allegations in the Fourth Amended Complaint do not expressly state, or show that Acosta Realty was the "mere instrumentality" of Mr. Neves. The allegations also do not state or even suggest any disregard of corporate formalities or the blurring of lines between Mr. Neves and Acosta Realty. Other than alleging in Paragraph 107 in connection with the fraud claim that Acosta Realty conducts no business, Markwood failed to plead any of the relevant factors considered under *Lancer Offshore, Inc.*, including that Acosta Realty (i) had no assets; (ii) was financed by Mr. Neves; (iii) was undercapitalized; or, that (iv) Mr. Neves paid the company's expenses and salaries. Instead, the Fourth Amended Complaint expressly states that Acosta Realty had a bank account as well as a brokerage bank account at two separate institutions, admitting that Acosta Realty was, in fact, a separate entity. Comp. [Bankr. ECF No. 419] at ¶¶ 95, 104. As this Court found, the "Court's duty to accept the facts alleged in the complaint as true does not require it to ignore specific factual allegations that negate the underlying theory of liability in favor of general or conclusory allegations." *Lancer Offshore, Inc.*, 2011 WL 1232986, at *7.

Markwood's assertions that the Fourth Amended Complaint contains "numerous allegations establishing" Mr. Neves "utterly disregarded" the corporate entity "by using it as his own private piggy bank" is outrageous as the Fourth Amended Complaint contains no such allegations. Appellant's Brief [ECF No. 19] at 16. The allegation in Paragraph 27 that Acosta Realty transferred monies to Mr. Neves without consideration is more akin to a fraudulent transfer claim and conspicuously absent from the list of relevant factors for review in analyzing whether Markwood properly pled the element of mere instrumentality. Besides, even if true, transfers lacking consideration do not evidence disregard of the corporate formalities. *Hilton Oil v. Oil Transport Co.*, 659 So. 2d 1141, 1151-2 (Fla. 3d DCA 1995) (noting that the fact that a shareholder who controls an entity routinely borrows funds from another entity without promissory notes does not, "singularly or collectively, justify disregarding the corporate entity.").

Finally, the lower court correctly found that Markwood cannot rely on the Consent Judgment in support of its alter ego theory because "a finding of substantive consolidation does not necessitate a finding of alter ego [veil piercing]. They are not the same." Oral Ruling [Bankr. ECF No. 924] at p. 6-17 (citing *In re S & G Fin. Services of S. Florida, Inc.*, 451 B.R. 573, 583 (Bankr. S.D. Fla. 2011)). *See infra* discussion concerning Consent Judgment at 26; *See also In re Coleman*,

417 B.R. 712, 726 (Bankr. S.D. Miss. 2009) (noting that consolidation is not the equivalent of veil piercing).

### 2.   Markwood Failed to Adequately Allege That Acosta Realty was Formed or Used for an Improper Purpose.

A cognizable claim for piercing the corporate veil requires allegations that the corporation was formed or used for an "improper purpose". *Lancer Offshore, Inc.*, 2011 WL 1232986 at * 6.   Pleading improper purpose requires allegations of "proof of *deliberate* misuse of the corporate form—tantamount to fraud." *John Daly Enters., LLC, v. Hippo Golf Co.,* 646 F. Supp. 2d 1347, 1353 (S.D. Fla. 2009). *See Al-Babtain v. Banoub,* 806CV1973T30TGW, 2007 WL 2774210, at *2 (M.D. Fla. Sept. 24, 2007) ("*In the absence of pleading* and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate, a creditor cannot question the corporate existence, but must confine his efforts to the remedies provided by law for satisfying his judgment from the assets of the corporation") (emphasis added). As the Court in *Hilton Oil v. Oil Transport Co.*, 659 So. 2d at 1152 noted:

> [u]nder Florida law, the corporate veil will not be pierced absent a showing of improper conduct. . .  The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that  the corporate entity is a fraud or that it is necessarily the  alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon

> them personally. Nor does the fact that the corporation's business affairs have been poorly handled, without more, justify piercing the corporate veil.

(internal citations omitted).

In *Hilton,* the Third District Court of Appeals reversed a trial court's order imposing personal liability notwithstanding the evidence indicating that the corporation did not follow corporate formalities, was inadequately capitalized, had common overlapping owners, officers and directors, used the same corporate office, made frequent informal loans to the shareholder who in turn financed the entity and did not have independent directors. *Id.* In making the determination that none of the above factors "singularly or collectively" justified disregarding the corporate entity, the court noted that at worse, these factors indicated that the shareholder operated the entity in a loose and haphazard manner. *Id.* The court, finding no improper purpose, reasoned that it is not uncommon for private closely-held entities to have poor business practices and that the relevant inquiry is whether the company had been organized for fraudulent, illegal or improper purposes. *Id.* at 1152-53.

Readily conceding that an "improper purpose" was "never expressly" pled, Markwood is attempting to use this appeal for a sixth bite at the apple contending for the very first time on appeal that the improper purpose was Acosta Realty entering into the Third Note with no current or future ability to perform its

contractual obligations under the note.  Appellant's Brief [ECF No. 19] at 18-19, 23-24.[7]   Markwood suggests that it could be "plausibly inferred from the Complaint' (sic) allegations that Neves caused Acosta Realty to enter into the Third Note and to obligate itself to repay Markwood $2.65 million plus interest, *despite the fact that Acosta Realty had no assets or sources of income* and conducted no business, *rendering it incapable of complying with its obligations to Markwo*od."   *Id.* at 19.   This statement is seriously misleading as the Fourth Amended Complaint is devoid of any allegations concerning Acosta Realty's ability to perform its contractual obligations,  its assets or lack thereof or its sources of income or lack thereof.   And, if the improper purpose is based on a theory that Acosta Realty fraudulently induced Markwood to enter into the Third Note, Markwood would have been required to plead the improper purpose with particularity.  Fed. R. Civ. P. 9(b) , Fed. R. Bankr. P. 7009.  *See  EED Holdings v. Palmer Johnson Acq. Corp.,* 228 F.R.D. 508, 512 (S.D.N.Y. 2005).  Furthermore, accepting as true that Mr. Neves caused Acosta Realty to enter into the note is of no moment as all corporate actions are ultimately directed by their shareholders.[8]

---

[7] Although as discussed *infra* Markwood cannot rely on facts not pled and arguments not asserted below, Mr. Neves nevertheless addresses this new argument in an abundance of caution.

[8] Markwood's reasoning exposes shareholders to individual liability for each and every action taken by the corporation no matter the purpose or motivation, eviscerating the ability to conduct business in the corporate form. *See Dania Jai Alai Palace v. Sykes,* 450 So. 2d 1114, 1120 (Fla. 1984) (if the mere fact that a

Finally, although Markwood broadly pled in its fraud count that Acosta Realty did not conduct any business, even if considered as to Count VI and taken as true, the allegation does not demonstrate that Acosta Realty lacked assets or sources of income or was unable to perform under its contracts.

Markwood claims for the first time on appeal that it can be "plausibly inferred" that Acosta could not perform its obligations "from the allegation that Acosta Realty 'never conducted any business' and that its sole purpose was to serve as "a vehicle to hide and move the stolen funds" obtained from Plaintiffs. *Id.* at 23.  This is another misleading statement as the Fourth Amended Complaint does **not** state that the "sole purpose" of Acosta Realty was to hide money.  Comp. [Bankr. ECF No. 419] at ¶ 107.  Rather, the Fourth Amended Complaint states that "*Neves Realty Holdings, like Acosta Realty Holdings,* never conducted any business and served merely as Debtor's alter ego and a vehicle to hide and move" the $8.5 million that was the subject of the unsuccessful fraud count (Count I). *Id.* Clearly, this allegation relating only to the fraud claim was directed at Neves Realty and not Acosta Realty and lacks any affirmative statements concerning Acosta Realty.  *See Salas,* 2015 WL 1412099 at *2, *5 (allegations of a

---

company is owned by one or two shareholders leads to the conclusion that the entity is a fraud, "it would completely destroy the corporate entity as a method of doing business.")

corporation hiding assets to shield them from an individual shareholder's creditors insufficient to plead an improper purpose.)

Markwood's assertion that the "ultimate facts alleged are more than sufficient to *establish inferentially* that Mr. Neves deployed Acosta Realty against Markwood for improper purposes resulting in injury to Markwood" is similarly a non-starter because Markwood did not plead any ultimate facts concerning any deployment of Acosta Realty by Mr. Neves for any purpose, let alone an improper purpose. Appellant's Brief [ECF No. 19] at 18. Markwood's contention that the essential improper purpose was "satisfied" by its "establishing" (as opposed to pleading), that Acosta Realty "was not properly capitalized and as a result could not meet its contractual obligations" is totally fallacious as Markwood *never pled* any facts whatsoever concerning the capitalization of Acosta Realty, its assets or lack thereof or its ability to meet its contractual obligations. *Id.* at 20. *See Geigo Properties, L.L.P. v. R.J. Gators Real Estate Group, Inc.*, 849 So. 2d 1109, 1111 (Fla. 4th DCA 2003) (undercapitalization is not a basis in and of itself to pierce the corporate veil). Finally, Markwood's remarks that Acosta Realty "empt[ied] out its accounts" and that Mr. Neves "depleted" all of its funds "and made sure that it had no assets or income source of its own" likewise lacks any record support and cannot be relied upon in this appeal. Appellant's Brief [ECF No. 19] at 24; *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 n.27 (11th Cir. 2012)

(finding that the sufficiency of a complaint can only be analyzed by what is actually plead in the complaint). *See In re Bull*, 528 B.R. 473, 492-93 (M.D. Fla. 2015) ( the "fact that [the corporation] may not retain sufficient assets to satisfy an inchoate claim that [the plaintiff] may have does not in and of itself give rise to a basis for disregarding the corporate form and piercing the veil to reach the corporation's individual shareholders.").

In addition to failing to plead the ultimate facts it now contends should be inferred, Markwood also elected to limit its argument below to asserting *only* that the entry of the Consent Judgment was grounds to pierce the corporate veil. Notably, Markwood never argued below that the improper purpose was the undercapitalization of Acosta Realty (which as shown above is insufficient by itself to show the improper purpose) or its inability to perform under the Third Note as it now belatedly hypes. It is axiomatic that an appellant cannot raise an argument on appeal that was not presented to the trial court. *Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011); *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012). Markwood had multiple opportunities below to argue that the improper conduct was Acosta Realty's undercapitalization and inability to pay the note, yet it chose **not** to raise these arguments at the hearing on Mr. Neves'

Motion in Limine [Bankr. ECF No. 922], in its response to Mr. Neves' motion [Bankr. ECF No. 903], or in its closing argument.   [Bankr. ECF No. 973].[9]

Markwood's total failure to allege that Acosta Realty had an inability to perform its obligations, was improperly capitalized or that it had no assets, distinguishes it from the decisions it relies upon and guts Markwood's contention that the improper purpose, although not pled, was Acosta Realty's inability to perform its contractual obligations. Initially, Markwood touts the decision in *Bellairs v. Mohrmann,* 716 So. 2d 320 (Fla. 2d DCA 1998), butchering its holding and contending that "improper capitalization" alone is a basis for piercing the corporate veil. *Id.* Appellant's Brief [ECF No. 19] at 21. In *Bellairs,* the appellate court construed the alter ego theory of long arm jurisdiction as requiring factual allegations sufficient to pierce the corporate veil of the resident corporation. *Id.* at 323.   Contrary to Markwood's reading, the Court **did not hold** that veil piercing was sufficiently pled through the allegations that the corporation lacked separateness and was a "hollow shell with no ability to meet its obligations." *Id.* Rather, relying on *Dania Jai-Alia* the Court specifically found that the third party complaint alleged that the entity was a mere instrumentality of its shareholders and

---

[9]The closest Markwood came to even addressing this argument was when it stated at the hearing without any record support that "Acosta Realty had no funds." [Bankr. ECF No. 922 at 32].   Yet, that contention was part and parcel of Markwood's larger argument that Neves was judicially estopped from arguing against piercing the corporate veil based on the Consent Judgment.

"*was used for improper conduct.*" *Id.* (emphasis added). The decision supports a finding that Markwood failed to adequately plead improper purpose and a veil piercing theory.

Markwood also relies on the decisions in *Ocala Breeders' Sales Co. v. Hialeah, Inc.,* 735 So. 2d 542 (Fla. 3d DCA  1999) and *Sanchez v. Renda Broadcasting Corp.*, 127 So. 3d 627 (Fla. 5th DCA 2013),  both of which involve proceedings supplementary to hold a parent liable for the corporation's adverse judgment.   However, each of those decisions found that the improper purpose element was properly alleged and that there were proper factual allegations that the corporations had no assets or bank account and no ability to satisfy its obligations. *Ocala Breeders'*, 735 So. 2d at 543-44; *Sanchez,* 127 So. 3d at 628-29.  *See also Geigo Properties, L.L.P.* 849 So. 2d at 1111 (court limits the holding in *Ocala Breeders'* to its facts refusing to pierce the corporate veil even though the shell corporation had no assets, bank account or income, the initial lease payments were made by the shareholder, and the architect who worked on the project was paid by a different entity owned by the shareholder.)

Likewise, the decision of *USP Real Estate Inv. Trust v. Discount Auto Parts, Inc.* 570 So. 2d 386 (Fla. 1 DCA 1990), found the mere instrumentality element present along with a whole host of other factors demonstrating improper purpose. *See Geigo*, 849 So. 2d at 11 (distinguishing *USP Real Estate* to instances where the

court finds improper purpose); *In re Bull*, 528 B.R. at 492 (same). Finally, *Southeast Capital Inv. Corp. v. Albemarle Hotel, Inc.,* 550 So. 2d 49 (Fla. 2d DCA 1989), is a decision that does not discuss the specific allegations in the complaint, but merely notes in a cursory manner that the trial court found the requisite unjust purpose or conduct under *Dania Jai-Alai, Inc.* and that the trial court correctly followed the standard set forth in that Florida Supreme Court decision. *Id.* at 51.

After five years of litigation in the lower court and five separate attempts at a pleading, it is undeniable that at the end of the day Markwood failed to properly plead and notice the required element of an improper purpose mandating affirmance of the lower court's granting of the motion in limine.

### 3.  Markwood Failed to Adequately Allege That It Was Injured By The Improper Use of Acosta Realty.

Even if the Fourth Amended Complaint is somehow construed as alleging an improper purpose, Markwood failed to allege the requisite injury caused by any improper purpose, *to wit,* the inability of Markwood to collect on the Third Note. Markwood's failure to allege that an improper purpose resulted in its injury is fatal as it must demonstrate causation before the veil can be pierced. *See In re Air Crash near Rio Grande Puerto Rico On December 3, 2008*, 2013 WL 1729385 at *6 ("The causation requirement, however, addresses whether the improper acts by the alleged alter ego caused the corporate entity to become unable to satisfy a monetary judgment.")

In the case of *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 373 (Bankr. M.D. Fla. 2014), the Middle District of Florida agreed that the injury to the claimant must result from the fraudulent or improper use of the corporate form holding that,

> [t]o the extent the theory is that the GTCR Group misused the corporate form by knowingly transferring liabilities to a sham corporation, *that is not what caused the loss*. It is the transfer of the assets from THI or THMI that caused the loss. So, even if the second element is satisfied, the third element is not, and as a consequence, the Plaintiffs cannot state a claim against the GTCR Group under any alter-ego or veil-piercing theories.

*Id.* (emphasis added); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("the fraudulent or improper use of the corporate form *caused injury* to the claimant" (emphasis added)).  *See also EED Holdings,* 228 F.R.D. at 513 (there must be a "nexus" between the shareholder's alleged failure to adequately capitalize the corporation and the harm from the alleged failure to perform its obligations); *Hambleton Brothers Lumber Co. v. Balkin Enters., Inc.,* 397 F. 3d 1217 (9th Cir. 2005) (finding defendant not personally liable for corporation's alleged breach of timber contract and noting that to impose corporate liability on a shareholder "a causal connection must be shown, there has to be a "relationship between the misconduct and the plaintiff's injury").[10]

---

[10] Also, even if the alleged hiding of the "stolen" funds or the participation in the alleged fraud established an improper purpose, which it did not, the claim also fails

There are no allegations in the Fourth Amended Complaint showing a nexus between any improper purpose, including the newly raised inability of Acosta Realty to perform its contractual obligations and Markwood's injury in failing to collect on the Third Note.   Even if the fraud allegation in Paragraph 107 (that Neves Realty, like Acosta Realty, was a vehicle to hide and move the stolen funds), is deemed the improper purpose, the injury caused thereby related only to the fraud claim and not to the Third Note.

Finally, Markwood's newly raised theory that the improper purpose is Acosta Realty's participation in the alleged but unsuccessful fraud is dispelled by the Fourth Amended Complaint itself which does not incorporate any of the fraud allegations into the Third Note claim (Count VI).   Comp. [Bankr. ECF No. 419] at ¶¶ 54-112 (fraud allegations), 149.   Only the individual Maximo Acosta was an alleged participant in the fraud, and not Acosta Realty.   *Id.* at ¶ 90, 91.

---

because Mr. Neves prevailed on the fraud claim (Count I) and thus any error by the lower court concerning this issue below would be harmless.   *See Rosenfeld v. Oceania Cruises, Inc.,* 682 F.3d 1320, 1333 (11th Cir. 2012) ("He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.   In other words, this court does not presume that prejudicial error occurred at trial" (internal citations omitted)); *United States v. Frazier*, 387 F.3d 1244, 1267 n. 20 (11th Cir. 2004) (noting that errors which do not have "substantial influence on the outcome of a case" or do not "leave grave doubt as to whether they affected the outcome of a case" are not grounds for reversal).

**B.      The Consent Judgment Does Not Establish that Acosta Realty and Mr. Neves Were Alter Egos at the Time of the Third Note Because Substantive Consolidation does not Require Corporate Domination, is not Retroactive and Collateral Estoppel is Inapplicable**.

Also, as the trial court correctly found, Markwood never alleged that the *Consent Judgment* demonstrated a basis for imposing veil piercing.  Initially, the Fourth Amended Complaint does not mention the Consent Judgment and fails to put Mr. Neves on notice that Markwood intended to use the Consent Judgment entered in a *separate* adversary proceeding involving nonparties, to demonstrate alter ego in this dispute.  *See* [Bankr. ECF No. 5 Adv. Case No. 10-03629]. Markwood  glommed onto the Consent Judgment only after discovery was closed. *See* Markwood's Resp. to Motion In Limine [Bankr. ECF No. 903] (dated February 20, 2014).  *See* Second Am. Jt. Sched. Order [Bankr. ECF 876] at ¶ 1 (indicating that fact discovery closed December 15, 2013); *See* Jt. PT Order [Bankr. ECF No. 997] at n.1 (Mr. Neves objects pursuant to Fed. R. Civ. P. 15(b) to the inclusion of any facts concerning veil piercing or alter-ego.)

Contrary to Markwood's assertion, the findings incorporated into the Consent Judgment are not binding on Mr. Neves.  Under Florida law, *res judicata* applies where there is: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made"; and (5)

the original claim was disposed on the merits. *Andela v. Univ. of Miami,* 692 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010) (applying Florida law); *Heney v. Windsor Corp.*, 777 F. Supp. 1575, 1577 (M.D. Fla. 1991) (applying Florida law). "For *res judicata* or collateral estoppel to apply, there must also exist in the prior litigation a 'clear-cut former adjudication' on the merits.'" *State St. Bank & Trust Co. v. Badra*, 765 So. 2d 251, 254 (Fla. 4th DCA 2000) (quoting *Suniland Assocs. v. Wilbenka, Inc.*, 656 So. 2d 1356, 1358 (Fla. 3d DCA 1995)).

It is undisputed that Markwood and Mr. Neves were *not* parties in the adversary proceeding wherein the Consent Judgment was entered. That proceeding was commenced by the chapter 7 trustee against Acosta Realty and Neves Realty Holdings, LLC. *See generally* Adv. Pro. Case No. 10-03269. Moreover, in that adversary proceeding the Court did not adjudicate whether Acosta Realty was Mr. Neves' alter ego because, *inter alia*: (i) the relief sought in the Consent Judgment is a bankruptcy specific administrative remedy that is forward looking in application from the date the court orders consolidation and not retroactively applied; and (ii) the Consent Judgment was entered upon the consent of parties absent a trial on the issues. *See Andela,* 692 F. Supp. 2d at 1371; *In re Murray Industries, Inc.*, 125 B.R. 314, 317 (Bankr. M.D. Fla. 1991).

Furthermore, even if Markwood had timely pled the Consent Judgment in the operative Fourth Amended Complaint which it did not, the admissions

contained in the Consent Judgment fail to satisfy the veil piercing pleading standards. The Second Circuit aptly described the dichotomy between substantive consolidation and piercing the corporate veil as follows:

> While this Court has recognized that the power to consolidate is one arising out of equity enabling a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation, the comparison of the two doctrines is not entirely apt. Initially, it should be noted that, unlike substantive consolidation, piercing the corporate veil does not sound solely in equity. The focus of piercing the corporate veil is the limited liability afforded to a corporation, and liability therefore may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties. Substantive consolidation, on the other hand, has a narrower focus: the equitable treatment of all creditors, and it turns on two critical factors: (i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit,'; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors.

*FDIC v. Colonial Realty Co.*, 966 F.2d 57, 60-61 (2d Cir. 1992) (internal citations omitted). *See In re Garden Ridge Corp.*, 386 F. App'x 41, 44 (3d Cir. 2010) (holding that substantive consolidation of entities in bankruptcy proceeding did not equate to disregarding the separateness of the entities for purposes of alter ego).

Markwood's reliance on the admissions contained in the Consent Judgment is entirely misplaced and contrary to the established case law  construing the effect

of substantive consolidation in bankruptcy cases. For example, in *In re Murray Industries, Inc.*, the Trustee argued that the Department of Revenue had waived a sovereign immunity defense to a fraudulent transfer claim based on a substantive consolidation order entered in the case. In finding no waiver, Judge Paskay stated:

> The substantive consolidation of several estates means one thing and one thing only — that all assets of the several entities are pooled and all creditors of the several entities are entitled to share in the pooled assets in accord with their respective rights. **It would certainly be a violation of due process if the order of substantive consolidation would operate to destroy defenses and rights which existed prior to the entry of the order of substantive consolidation**.

125 B.R.. at 317 (emphasis added). Likewise, in *In re Optical Technologies*, 252 B.R. 531 (M.D. Fla. 2000), a trustee sued two former officers of the debtor to avoid certain transfers as fraudulent. The defendants contended that the subject payments were not property of the estate and therefore, could not be avoided. The trustee sought to correct this deficiency by filing Chapter 11 cases for the non-debtors and then substantively consolidating the non-debtors with the original debtors. *Id.* at 540. The district court adopted the ruling in *Murray Industries*, affirmed summary judgment for the defendants and found that the substantive consolidation order did not act as a bar to the defendants arguing that the transfers they received were not property of the estate. *Id.*

Other jurisdictions agree on the limitations of a bankruptcy court's substantive consolidation order. *See e.g. In re Dow Corning*, 419 F.3d 195, 215 (3rd Cir. 2007) ("substantive consolidation should be used defensively to remedy identifiable harms, not offensively to achieve advantage over one group…, nor a 'free pass' to spare Debtors or any other group from proving challenges, like fraudulent transfer claims, that are liberally brandished to scare yet are hard to show"); *In re Geneva ANHX*, 496 B.R. 888, 901 (Bankr. C.D. Ill. 2013) (same); *In re E'Lite Eyewear Holding, Inc.*, 08-41374, 2009 WL 349832, at *2 (Bankr. E.D. Tex. Feb. 5, 2009) (same); *In re Garden Ridge Corporation*, 338 B.R. 627, 641 (Bankr. D. Del. 2006) (finding that substantive consolidation order did not retroactively operate to destroy a defense based on lack of mutuality).

Here, Markwood cites to two admissions contained in the Court's Consent Judgment in support of its alter ego claim as follows:  (i) Acosta Realty did not have any business activities or sources of income; and (ii) there is a commonality of interests between Mr. Neves and Acosta Realty. Appellant's Brief [ECF No. 19] at 17.  Yet, these admissions do not show that Mr. Neves dominated Acosta Realty or that it failed to adhere to corporate formalities.  Also, these admissions were made years after Acosta Realty entered into the Third Note.  Thus, the admissions could not place Mr. Neves on notice that Markwood was alleging that Acosta

Realty was the alter ego of Mr. Neves *at the time* the Promissory Note was executed by Acosta Realty.

The failure to sufficiently allege the requisite alter ego element of veil piercing mandated that the Bankruptcy Court grant the Motion in Limine which action was correct as a matter of law.

## CONCLUSION

Markwood's failure to adequately plead any one of the three elements for veil piercing is fatal to its theory to attain individual liability for a corporate obligation. The Bankruptcy Court correctly held that Markwood's Fourth Amended Complaint failed to adequately plead a veil piercing theory as to Acosta Realty.

Based on the foregoing arguments and authorities, Mr. Neves respectfully requests entry of an order affirming the Bankruptcy Court's oral ruling granting the Motion in Limine and granting Mr. Neves such further and additional relief as may be just and appropriate, including affirmance of the Amended Final Judgment finding in favor of Mr. Neves as to Count VI of the Fourth Amended Complaint.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set forth in Rule 8015(a)(7)(C) of the Federal Rules of Bankruptcy Procedure. This brief contains 8151 words (less than 14,000 words), inclusive of the portions

exempted by 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.   This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6).   It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Respectfully submitted,

**AKERMAN LLP**
One Southeast Third Avenue
25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095

By: /s/ Joanne Gelfand
Joanne Gelfand, Florida Bar No. 515965
E-mail: joanne.gelfand@akerman.com
Michael Chavies, Florida Bar No. 191254
E-mail: michael.chavies@akerman.com
Brian P. Miller, Florida Bar No. 980633
E-mail: brian.miller@akerman.com
Ilana Tabacinic, Florida Bar No. 57597
E-mail: ilana.tabacinic@akerman.com

*Attorneys for Appellee Fabrizio Dulcetti Neves*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of

Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By: */s/ Joanne Gelfand*
Joanne Gelfand